**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

RUSSELL HOSKINS, :

                    Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant. :

Case No. 3:09-cv-465

District Judge Timothy S. Black
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits

prior to the date that the claimant files an SSI application.  *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations.  20 C.F.R. §404.1520.  First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled.  Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments;  if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded.  20 C.F.R. §404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment;  if not, the claimant is found not disabled.  Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform.  *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on April 2, 2002, alleging disability from April 2, 2002, due to residuals of a broken femur and reconstructive hip surgery.  (Tr. 46-48; 69).  Plaintiff's application was denied at the hearing level, (Tr. 285-86), and Plaintiff took no further appeal.

Plaintiff filed a second application for SSI on July 13, 2005, alleging disability from April 2, 2002, due to residuals of a gunshot wound to his left femur.  (Tr. 302-05; 313).  Plaintiff's application was denied initially and on reconsideration.  (Tr. 287-93).  Administrative Law Judge

Daniel Shell held a hearing, (Tr. 628-46), following which he determined that Plaintiff is not disabled. (Tr. 11-24). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that Plaintiff has severe post-traumatic arthritis secondary to a left femur fracture and the residuals of surgery but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 16, ¶ 2; Tr. 17, ¶ 3). Judge Shell also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 17, ¶ 4). Judge Shell then used section 202.20 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 20, ¶ 9). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 21).

The record contains the evidence which Plaintiff submitted in support of his April 2, 2002, application and which the Court will briefly review for the purpose of providing a longitudinal view of Plaintiff's alleged impairments.

In August, 1992, Plaintiff was shot twice which resulted in the fracture of his left femur and Plaintiff underwent an open reduction and internal fixation with hardware which Dr. Young performed. (Tr. 342-74). On April 10, 2002, Dr. DiCicco performed hardware removal due to Plaintiff's symptoms consistent with avascular necrosis. (Tr. 408-21). An April 19, 2002, x-ray of Plaintiff's left hip revealed extensive osteoarthritis with erosive changes affecting the left hip. (Tr. 151).

The record contains a copy of Plaintiff's treatment notes from the Hopeland

Clinic/Cassano Health Center dated March 2, through July 17, 2002. (Tr. 167-82). Those notes reveal that the health care providers at that facility treated Plaintiff primarily for left hip pain. *Id.* The notes also reveal that the health care providers noted that Plaintiff had a limited range of motion and limited weight bearing ability on the left. A bone scan indicated markedly increased activity in the left femoral head and neck, most likely related to the prior fracture and possible low-grade infection. *Id.*

The record contains a copy of Plaintiff's treatment notes from Grandview Hospital Out-Patient Clinic dated March 27 through September 11, 2002. (Tr. 214-26). Those notes reveal that the health care providers at that facility treated Plaintiff for complaints of left hip pain. *Id.* Plaintiff participated in physical therapy August 20 through September 10, 2002, during which time it was noted that Plaintiff had a decreased range of motion and decreased strength of his left hip and a leg-length discrepancy. (Tr. 209-13).

Examining psychologist Dr. McIntosh noted on December 6, 2002, that Plaintiff reported he was homeless, had been staying with different people, sustained a gunshot wound to his left femur which never healed properly, he had constant pain in the upper leg area, and that he had been under mental stress since his mother died in June, 2000. (Tr. 227-32). Dr. McIntosh also noted that Plaintiff reported that he left school at age seventeen, he was not able to read well enough to understand a newspaper, he passed a written driver's test on the second try, that he had been released in 2001 after spending seven years in the penitentiary, and that he was still on parole. *Id.* Dr. McIntosh reported that Plaintiff walked with a cane on the right side, maintained a very sad and tearful affect, had a depressed mood, reportedly attempted suicide a few months ago, appeared to be somewhat shaky and tense, was oriented, had no lapses in alertness, and did not have periods of

mental confusion. *Id.* Dr. McIntosh also reported that Plaintiff's speech was normal, he was highly preoccupied about his fear of not having food and shelter and obsessed about the topic, he had a moderate degree of insight into his current functioning, and that his judgment seemed to have been impaired in the past with respect to illegal conduct and drug abuse. *Id.* Dr. McIntosh identified Plaintiff's diagnoses as major depression, single episode, severe and borderline intellectual functioning; he assigned him a GAF of 45. *Id.* Dr. McIntosh opined that Plaintiff's abilities to understand, remember, and carry out one and two-step job instructions, to interact with others, and to tolerate the stress and pressure of day-to-day work activity appeared to be moderately impaired and his ability to maintain concentration and attention sufficient for simple, repetitive tasks seemed poor. *Id.* Dr. McIntosh also opined that if he were granted benefits, Plaintiff should have a payee due to his prior history of drug use. *Id.*

Dr. Davis of the Cassano Health Center reported on April 14, 2004, that Plaintiff was able to lift/carry up to ten pounds occasionally and frequently, sit for eight hours in an eight-hour day and for fifteen minutes without interruption, and was able to stand for only a minimal period of time, and that he was able to work eight hours a day at a seated job with frequent breaks for repositioning. (Tr. 268-72). Dr. Davis also reported that Plaintiff was able to perform sedentary work, but was not able to perform light work. *Id.*

In support of his current application, Plaintiff submitted the following evidence.

First, Plaintiff again submitted the August,1992, records related to his gunshot injuries and subsequent left femur surgery, (Tr. 342-71), as well as the records related to the April, 2002, removal of the hardware that had been placed as treatment for the fractured femur. (Tr. 408-21).

The record contains a copy of Plaintiff treatment notes from Grandview Hospital Out-Patient Clinic dated November 1993 through August 2002 which reveal that Plaintiff received treatment at that facility for the residuals of his left femur injury and surgery including hip pain. (Tr. 375-407). A November 17, 1993, x-ray revealed a lucent zone around compression screw compatible with loosening of the screw. (Tr. 377).

Examining physician Dr. Vitols reported on September 8, 2005, that Plaintiff had an antalgic gait favoring the left lower extremity, moderate myospasms of his dorsolumbar spine, diminished range of motion of his low back, left sciatic notch and left hip tenderness, was able to perform tandem walking, and that he had intact walking on toes. (Tr. 431-38). Dr. Vitols also reported that Plaintiff used no assistive devices for ambulation, had some difficulty with heel and toe walking, demonstrated painful left hip motion with restricted and loss of muscle strength, had foreshortening of the left extremity at one and one-half inches, and that he had calf atrophy at midcalf on the left. *Id.* Dr. Vitols identified Plaintiff's diagnoses as status post fracture left femur with chronic hip pain and weakness, foreshortening left lower extremity, lumbosacral sprain and strain, and exogenous obesity and hypertension as per history. *Id.* Dr. Vitols opined that Plaintiff's work capabilities and tasks of daily living were "affected accordingly." *Id.*

The record contains a copy of Plaintiff's treatment notes from Sugarcreek Family Health dated January 26, 2004, through August 6, 2008. (Tr. 461-83; 537-49; 585-99; 610-12). Those records reveal that Plaintiff's physician at that facility, Dr. Apple, treated Plaintiff for various medical conditions and complaints including urinary tract infection, cystitis, hemorrhoids, depression, and chronic left leg and hip pain. *Id.* Those records also reveal that Plaintiff displayed tenderness and reduced ranges of motion. *Id.*

March 28, 2007, x-rays of Plaintiff left hip revealed advanced osteoarthritic changes. (Tr. 545).

The record contains Plaintiff's records from Advanced Therapeutic Services, Inc., dated September 20, 2005, through January 19, 2007. (Tr. 484-511). Those records reveal that at the time Plaintiff's mental health therapist initially assessed him, she noted that Plaintiff displayed a depressed mood and decreased energy and that he reported insomnia, decreased motivation, and occasional irritability. *Id.* Plaintiff's mental health therapist identified Plaintiff's diagnosis as depressive disorder NOS. *Id.* Plaintiff received individual counseling services from his therapist about every two to four weeks. *Id.* On March 21, 2007, Plaintiff's therapist reported that she had been counseling Plaintiff from November 28, 2006, to the present, his diagnosis was depressive disorder NOS, he was not able to perform several work-related mental activities, and that he had marked restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence, or pace. *Id.* Plaintiff's therapist also reported that Plaintiff had good to fair to poor abilities to make occupational and personal-social adjustments and good to fair abilities to make performance adjustments. *Id.*

The record contains Plaintiff's treatment notes from American Health and Pain Management dated March 9, 2006, through January 15, 2008, where Plaintiff received treatment from Dr. Kay for left hip degenerative joint disease. (Tr. 510-36; 569-74). Over time, Dr. Kay noted that Plaintiff had an antalgic/spastic gait, severe pain and tenderness, muscle spasms, and decreased ranges of motion of the left hip, and pain with mobility. *Id.* Dr. Kay prescribed medication for Plaintiff and injected his hip with Marcaine and Kenalog. *Id.* On May 11, 2007, Dr. Kay reported that Plaintiff had severe left hip arthritis and a one inch left leg discrepancy, that he

was able to lift/carry up to ten pounds occasionally and up to five pounds occasionally, stand/walk for one-quarter hour in an eight-hour day and for one-quarter hour without interruption, and sit for one-half hour in an eight-hour day and for one-half hour without interruption. *Id.* Dr. Kay also reported that Plaintiff was not able to perform either sedentary or light work. *Id.* Dr. Kay reported further that Plaintiff was not able to perform many work-related mental activities, had extreme restriction of activities of daily living, moderate difficulties in maintaining social functioning, and extreme deficiencies of concentration, persistence, or pace. (Tr. 600-09).

Plaintiff continued to receive counseling services at Advanced Therapeutics during the period February 28, 2007, through August 12, 2008. (Tr. 551-52; 576-84; 613-19). On June 25, 2008, Plaintiff's therapist noted that Plaintiff' diagnoses were post-traumatic stress disorder, chronic, depressive disorder NOS, and rule out cannabis dependence in remission. *Id.*

Dr. Apple reported on October 1, 2008, that he first treated Plaintiff on March 20, 2007, last saw him on August 6, 2008, his diagnoses were chronic left hip pain secondary to a gunshot wound and severe osteoarthritis and elbow bursitis, that he was able to lift/carry up to five pounds frequently and ten pounds occasionally and stand/walk for one hour in an eight-hour day and for one-half hour without interruption, and that his ability to sit was not significantly impaired but that he was limited to sitting for four hours in an eight-hour day and for two hours without interruption. (Tr. 620-27). Dr. Apple also reported that Plaintiff was not able to perform sedentary work because he could lift a maximum of five pounds and that he was not able to perform light work. *Id.*

Plaintiff alleges that the Commissioner erred by rejecting his treating physicians' opinions. (Doc. 7).

9

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,* 582 F.3d at 406, *citing, Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the

11

record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In determining that Dr. Kay's and Dr. Apples' opinions were not entitled to controlling, or even great weight, Judge Shell essentially determined that those opinions were not supported by the objective findings and clinical notes of record and were inconsistent with other evidence of record. (Tr. 18-20). This Court disagrees.

As noted above, Dr. Kay, Plaintiff's treating pain physician, identified Plaintiff's diagnoses as severe left hip arthritis and leg-length discrepancy and he documented that Plaintiff has an antalgic/spastic gait, severe pain and tenderness on palpation, muscle spasms, decreased ranges of motion of his left hip, and pain with mobility. Similarly, treating physician Dr. Apple noted that Plaintiff has severe osteoarthritis in his left hip and documented tenderness and pain on palpation and decreased ranges of motion of that hip.

Drs. Kay's and Apple's opinions are consistent with the findings which Dr. Vitols reported including an antalgic gait, moderate myospasms, diminished range of motion, tenderness on palpation, difficulty with heel and toe walking, painful hip motion with restricted and loss of muscle strength, and calf atrophy on the left.

Finally, Dr. Kay's and Apple's opinions are supported by the objective medical test results, particularly the x-rays of record which reveal that Plaintiff has advanced osteoarthritis changes in his left hip.

The only opinions which arguably conflict with Dr. Kay's and Dr. Apple's opinions are the opinions of the non-treating, non-examining reviewing physicians. (Tr. 453-60).

Under these facts, this Court concludes that the Commissioner erred by rejecting

12

Plaintiff's treating physicians' opinions and by instead relying on the reviewing physicians' opinions. Accordingly, the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. §405(g).  If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted);  *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order.  *Sullivan v. Finkelstein,* 496 U.S. 617 (1990).  The fourth sentence does not require the district court to choose between entering final judgment and remanding;  to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing."  *Id.*

This Court concludes that not all of the factual issues have been resolved and therefore the record does not adequately establish Plaintiff's entitlement to benefits. Specifically, the Court notes that treating physician Dr. Kay's and Dr. Apple's opinions may support a finding that Plaintiff is capable of performing a range of sedentary work. The task of resolving that factual issue is, of course, reserved to the Commissioner.

It is therefore recommended that judgment be entered in favor of Plaintiff reversing the Commissioner's decision that Plaintiff is not disabled. It is further recommended that this matter be remanded to the Commissioner for additional administrative proceedings consistent with this Report.

October 18, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).